Reed *v.* Henson *et al.*

(Division B.  Oct. 6, 1930.)

[130 So. 108.  No. 28623.]

Williamson & Clayton, of Meridian, for appellant.

R. M. Bourdeaux, of Meridian, for appellees.

Thos. L. Bailey, of Meridian, for appellees.

**Anderson, J.,** delivered the opinion of the court.

Appellant, being the owner of a one-half undivided interest in a lot and a residence thereon in Lauderdale county, filed her bill in the chancery court of that county against the appellees W. M. Henson and Mrs. Mildred Henson, his wife, and the other appellees who were predecessors in title to the Hensons, for a sale of the property, and a division of the proceeds thereof between the parties according to their respective interest, and

for an accounting by all the appellees for rents and profits of the property while they were in possession thereof. The appellees answered separately, except the Hensons, who answered jointly, making their answers cross-bills. The cause was heard on the pleadings and proofs, report of special master, and exceptions to such report. A decree was rendered, granting in part the relief prayed for. Being dissatisfied with the decree, appellant prosecutes this appeal.

The house and lot involved was owned by Prince Reed, the father of appellant, who died in December, 1909. At the time of his death he was seized and possessed of the property, and had a fee-simple title thereto. He left surviving him his wife, now Mrs. Quinnelley. At the time of his death he had neither child nor descendants of children; but within four or five months after his death a child, the appellant, was born to his widow which was his child.

His widow and appellant were his sole heirs, and therefore inherited the house and lot in equal shares. At the time of Prince Reed's death there was a mortgage indebtedness against the property in the sum of eight hundred dollars. Both he and his wife executed the note and the mortgage to secure the same. About two months after his death his widow sold and conveyed the property by warranty deed to appellee C. M. Williams, who, under the conveyance, took exclusive possession of the property, and used and occupied it for eleven months. Appellee Williams then conveyed the property by warranty deed to appellee M. M. Myers, who took exclusive possession of the property, and used and occupied it from the date of the conveyance to him, January 14, 1911, to January 26, 1919. The appellee Myers conveyed the property by warranty deed to appellee E. E. Ballard, who took exclusive possession of it, and used it for thirteen months. Appellee Ballard then conveyed the property to Mr. J. G. Repsher. Repsher went into exclusive use of the prop-

erty, and occupied it for sixteen and a half months, when he conveyed it to appellees, the Hensons, who had the exclusive use and occupation of the property for seventy-eight months prior to the final decree rendered in this cause.

The special master, in his report of his findings of fact, showed that each of these successive vendees, including the Hensons, paid the taxes on the property; some of them expended money for improvements and insurance. He also found the reasonable rental value of the property during each period of ownership. His finding with reference to the debits and credits during the occupation by the appellees, the Hensons, were as follows: "Dr. For use and occupation July 1, 1921, to January 1, 1928, seventy-eight months at eighteen dollars a month, one thousand four hundred four dollars. Cr. Less taxes 1921 to 1927, one hundred sixty-five dollars and twenty-one cents; improvements one hundred six dollars; insurance seventy-two dollars; total three hundred forty-three dollars and twenty-one cents"—which credits deducted from the debits left one thousand sixty dollars and seventy-nine cents.

Pending the litigation, the house and lot were sold by decree of the court, bringing one thousand seven hundred dollars, which sum is in court, in the hands of the special commissioner who made the sale. The final decree disposed of the main issues involved in the case in this language: "That as between complainants and all of the successive owners of the property in question, from the death of Prince Reed, Eddie Mae Reed's father, to and including W. M. Henson and Mrs. Mildred M. Henson, the following is a just, true and equitable statement of accounts: Cr. The entire value of reasonable use and occupation of the premises, one thousand four hundred four dollars; sale price of land as per report of special commissioner, one thousand seven hundred dollars, total three thousand one hundred four dollars. Dr. Taxes, insurance and re-

pairs, three hundred forty-three dollars and thirty-one cents, incumbrance paid off that existed at the time of the death of Prince Reed, eight hundred dollars; interest on incumbrance, three hundred twelve dollars; permanent improvements on premises, seven hundred fifty dollars; interest on permanent improvements, two hundred ninety-two dollars and fifty cents; total debits, two thousand four hundred ninety-seven dollars and eighty-one cents. Balance, six hundred six dollars and nineteen cents. And the court further adjudges that the said Eddie Mae Reed, by her next friend, is entitled to receive one-half of said credit balance of three hundred three dollars and nineteen cents, less her half of the costs hereinafter adjudged.''

The record shows the rental value of one thousand four hundred four dollars only covered the period of occupancy of the appellees, the Hensons, and that the interest of three hundred twelve dollars on the incumbrance, and the interest of two hundred ninety-two dollars and fifty cents on permanent improvements, were also only for the period of the occupancy of the appellees, the Hensons. The court rendered no decree for either the appellant or the other appellees than the Hensons, settling and adjusting their rights with reference to the value of the use of the occupation, taxes, insurance, and improvements during their ownership of the undivided interest and occupation of the premises.

Appellant assigns as error the action of the court in allowing the Hensons credit for the mortgage indebtedness of eight hundred dollars against the property, and interest thereon, during the period of their ownership of the one-half undivided interest therein, and their occupancy thereof, without charging them with the value of the use of the property while in the possession of their predecessors in title, the other appellees.

The evidence in the case showed that all of the appellees were bona-fide purchasers of the house and lot, with-

out notice that appellant had any interest therein. In other words, the evidence showed that each of the appellees purchased and paid for the property, believing that they were getting a fee-simple title to the entire interest therein. Appellant invokes the equitable principle that, in the partition of lands held in common, the court will, in the division of the property, or its proceeds, if sold for division, do full justice between the cotenants, by directing an accounting to be taken of the receipts and disbursements by them, and will so apportion the funds as to do complete equity. This equitable principle, however, has no application in favor of one cotenant against the interest of the other, where the latter is a bona-fide purchaser of the property without notice of the rights of the former. Burns v. Dreyfus, 69 Miss. 211, 11 So. 107, 30 Am. St. Rep. 539. Such equities are cut off as against the bona-fide purchasing tenant in common.

The evidence in this cause showed that, when appellant's mother conveyed the house and lot to the appellee Williams, there was a mortgage indebtedness against it of eight hundred dollars, and the property was worth only nine hundred fifty dollars, and that the consideration for the conveyance was one hundred twenty-five dollars cash, and the assumption by the appellee Williams of the mortgage indebtedness.

It is true the mortgage indebtedness was discharged by Williams and appellees other than the Hensons before the latter acquired it. But, as against appellant, it was a charge against the property in favor of each of the vendees down to and including the Hensons. The discharge of the mortgage added that much to the value of the property, which additional value was conveyed to each of the vendees, from Williams on down to, and including, the Hensons. Therefore, when the Hensons bought the property, they received and paid for that additional value. The value of the use and occupation of the vendees prior to the Hensons cannot be set off

against the mortgage indebtedness. Such claims did not go with the conveyance of the lands; they were personal obligations of such vendees.'

The chancellor allowed the Hensons credit for seven hundred fifty dollars, and interest thereon from the time they acquired the property until the decree, on account of the increase in the value of the property because of improvements placed thereon by the predecessors in title to the Hensons, without allowing appellant to offset against this charge the value of the use and occupation of the property while in possession of such predecessor in title.

Appellant contends that the increase in value of seven hundred fifty dollars should not have been allowed, and, if allowed, appellant should have been permitted to offset against it the value of such use and occupation.

We do not think there is any merit in either of these contentions. The increase in the value of the property on account of permanent improvements, and other conditions found by the court to exist, were simply a part of the value of the property, which, like the mortgage indebtedness, went with it by virtue of each successive conveyance, down to and including the Hensons. The latter paid one thousand eight hundred dollars for the property, which of course included its value increased by such permanent improvements.

For the same reason that the value of the use and occupation of the predecessors in title of the Hensons could not be set off against the mortgage indebtedness, it cannot be set off against the increased value of the property as a result of the permanent improvements.

Appellant assigned as error the action of the court in refusing to allow appellant interest on the value of the use and occupation of the property. We think this was error. We can see no reason why appellant was not entitled to interest on this item of the account.

Appellant contends that the court erred in refusing to charge appellant with only one-fourth of the mortgage indebtedness against the property at the time it was conveyed by appellant's mother to the appellee Williams, instead of one-half. This contention is based on the theory that the mortgage indebtedness against the property was an indebtedness of both the father and mother of appellant, instead of the father alone, and therefore she should have been charged with only one-fourth of it, instead of one-half. The court found that, although appellant's mother joined in the execution of the notes and the mortgage which represented this indebtedness, it was, in fact, the indebtedness of appellant's father.

It results from these views that, in the accounting between the appellant and the Hensons, the latter should have been charged with interest on the one thousand four hundred four dollars, the value of the use and occupation of the property for the period of their occupancy up to the time of the decree. With that exception, the accounting set out in the decree is correct, and should stand.

The court, in its decree, did not settle the rights and obligations as between appellant and the other appellees than the Hensons; they appear to have been left undecided, and therefore we do not pass on them.

For this reason, and for the further reason that it is necessary to restate the account between the appellant and the appellees, the Hensons, in accordance with this opinion, a final decree is not rendered in this court.

Reversed and remanded.